# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0792
Filed July 22, 2026

————————————

**In the Interest of T.D. and M.B., Minor Children,**

**M.T., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Scott County,
The Honorable Cheryl Traum, Judge.

————————————

**AFFIRMED**

————————————

Jennifer Margaret Triner Olsen, Davenport, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Angela Fritz Reyes, Davenport, attorney and guardian ad litem for minor children.

————————————

Considered without oral argument
by Schumacher, P.J., and Badding and Langholz, JJ.
Opinion by Badding, J.

**BADDING, Judge.**

A mother of two children—a son born in 2019 and a daughter born in 2020—appeals the termination of her parental rights.[1] She challenges the statutory grounds for termination, argues termination is not in the children's best interests, and asserts a permissive exception should have been applied. We affirm upon our de novo review of the record.

## I. Background Facts and Proceedings

In February 2024, the Iowa Department of Health and Human Services received several concerning reports about this family. The reports included allegations of physical abuse by the mother and her boyfriend, unsanitary home conditions, illegal substance use, and domestic violence. Both children had "scars on their shoulders and wrists that look[ed] like they were struck with an object." The son reported that the mother's boyfriend hit them with a belt. And the mother acknowledged that she and her boyfriend had "anger issues" but said that "neither of them mean[t] to hit the children too hard." While the department was investigating these allegations, the daughter disclosed sexual abuse by the mother's boyfriend.

With the mother's agreement, the children were placed in foster care while she was offered services to address the reported concerns. Unfortunately, the mother did not take advantage of those services, which included solution-based casework, parenting education, and drug testing. She also continued her relationship with the abusive boyfriend and missed visits with the children. So, in May 2024, the State petitioned to have the

---

[1] Although the State also petitioned to terminate the parental rights of the children's fathers, they were not served with notice of the petition, and their rights were not terminated.

children adjudicated in need of assistance. The court granted the petition and formally removed the children from the mother's custody in June.

Over the next few months, the mother gradually engaged in services. She provided a hair sample that tested negative for drugs in July and began having more consistent visits with the children. She also ended her relationship with the boyfriend. In meetings with the department's case manager, the mother disclosed significant childhood trauma, as well as abuse and sex trafficking by the oldest child's father, who was a registered sex offender. By September, the department reported that the mother had made a "huge turn around." A family support specialist observed that the mother was open "to new ideas and resources to better herself and learn to provide a safe environment for the children." The specialist also reported that the mother's visits with the children were positive and loving.

After those encouraging steps forward, the mother tested positive for cocaine in October and December. She denied using cocaine and provided a negative drug test in January 2025. She also secured a substance-use evaluation, which recommended continuing education. The mother quickly completed those classes and, in the months that followed, participated in counseling and medication management for her reported bipolar diagnosis. Her visits with the children remained consistent and appropriate. And she maintained stable housing and employment. With this progress, the mother moved to unsupervised overnight visits in May. In its permanency order the next month, the juvenile court granted the mother a six-month extension, anticipating that the children could be returned to her custody by then.

But in September, the mother's visits returned to fully supervised after she allowed a new boyfriend to be around the children. That boyfriend, like others before him, had a lengthy and violent criminal history. The mother

stopped attending treatment for her mental health. She also refused to participate in services that had been recommended for months to address her domestically violent relationships and provide support for survivors of sex trafficking. Because of those developments, the department recommended changing the permanency goal to termination of parental rights. The juvenile court agreed with the department's recommendation:

> Since the permanency hearing, the mother continues to choose men who are not appropriate to be around the children. She has been offered services for domestic violence and support, but she will not take advantage of those services. She will not work with the provider on how to identify healthy relationships. The Department has recently been concerned about one male that has been at the mother's home. He has a lengthy criminal history and the Department has not approved for him to be around the children. The mother stated she is not in a relationship with him, but the children were calling him dad. In addition, the children told the provider they were not supposed to tell anyone. The paramour has also provided transportation to the children while the mother had unsupervised visits. The mother has not addressed the domestic violence and her own sex trafficking trauma. The mother ended her three recent visits early because she did not agree with what was expected of her.

The State petitioned to terminate the mother's parental rights in December. The week before the termination hearing in March 2026, the mother's boyfriend was arrested at her apartment for domestic-abuse assault. The daughter was also exhibiting extreme behaviors after visits—which had again become inconsistent—including banging her head into a wall and throwing a lamp at her foster father. She also threatened to hurt one of the foster parents' children with a knife. A newly retained psychiatrist for the daughter recommended pausing visits with the mother until the daughter could be evaluated.

At the termination hearing, the department's case manager testified that the children could not be safely returned to the mother because she had

not addressed her unhealthy relationships, had failed to continue in mental-health therapy, and was inconsistently visiting the children. The mother disputed some of these claims, testifying that she was trying to get back into therapy. She had also recently started domestic violence services and ended her most recent relationship—although a family support specialist noticed hickeys on her neck. The mother pointed out that she had maintained full-time employment and housing throughout the proceedings. But she testified that one of her daycare options if the children were returned to her custody was her sister, who had a felony child endangerment charge. The mother's sister had also lost custody of three of her children and was with a man who had threatened the mother with a gun.

At the end of the hearing, the children's guardian ad litem asked for more time to think about her recommendation, telling the juvenile court "this is a tough one." But, in a written report filed after the hearing, the guardian ad litem recommended termination, reasoning:

> [T]he mother's care and safe decisions are the primary issue, and she cannot protect her children from abusive people, and the children have waited long enough. . . .
>
> [The department] has expressed consistent concern regarding the additional challenges such as domestic violence, dealing with [the mother's] past trauma, and protection of the children, with minimal improvement observed over two years of services. She continues to choose men with criminal histories . . . . Unfortunately, she has not made meaningful progress to justify either reunification or extended time to fulfill case plan requirements. The need for permanency for these children is paramount; it is not in their best interest to await indefinite improvement from their parents.

In its April termination order, the juvenile court agreed with the guardian ad litem, finding that although the mother "complied with many of the requirements in this case," the "main concern remains the mother's

ability to keep the children safe." The court reviewed the mother's relationship history, noting that she "has been involved in multiple domestically violent relationships." The relationships highlighted by the court included the oldest child's father, who was in prison in Illinois for "domestic battery with bodily harm and aggravated criminal sexual abuse of a 13 year old," and the boyfriend at the start of the case, who was abusive to both children. Despite that history, the court noted that the mother declined services for domestic violence survivors, stopped participating in therapy, and refused providers' attempts to educate her on "how to identify healthy relationships." The court concluded that the mother's "pattern of refusing to address these issues indicates she is unlikely to address these issues in the future" and that she "has not made the necessary progress to provide a safe and stable home for these young children." The court accordingly terminated the mother's parental rights under Iowa Code section 232.116(1)(d) and (f).[2] The mother appeals.

## II.    Analysis

We review termination proceedings de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). Our review follows a familiar three-step framework that considers whether (1) a statutory ground for termination has been established; (2) termination is in the best interest of the child; and (3) a

---

[2] In the decretal portion of the ruling, the juvenile court stated that the mother's parental rights were terminated under paragraphs (a), (e), (g), and (i) of Iowa Code section 232.116(1), although in its factual findings, the court found that those paragraphs were not proven by the State. Instead, the court found that the State had proven paragraphs (d) and (f). Given the court's factual findings, we construe its ruling to have terminated the mother's parental rights under paragraphs (d) and (f). *See In re H.C.*, No. 16-1961, 2017 WL 512798, at *2 (Iowa Ct. App. Feb. 8, 2017) ("[W]e decline to place form over substance and waste judicial resources on what was clearly a clerical error.").

permissive exception should be applied. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc); *see* Iowa Code § 232.116(1)–(3). The mother challenges each of these steps.

## A. Statutory Ground

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to focus on paragraph (f).[3] The mother challenges the fourth element of that paragraph—whether the State proved by clear and convincing evidence that the children could not be safely returned to her custody "at the present time." Iowa Code § 232.116(1)(f)(4); *see also In re A.S.*, 906 N.W.2d 467, 473 (Iowa 2018) (interpreting "present time" to mean "the time of the termination hearing").

The mother argues that she "remedied the issues that led to the children being removed" by complying with substance-use treatment and remaining sober, maintaining employment and housing, and participating in mental-health treatment. She contends that the "only task she was still working on was domestic violence services." Trying to frame the most recent domestic violence incident in a positive way, the mother asserts that she acted appropriately by asking neighbors to call the police. She argues that was "an excellent sign that she can protect herself from abusers and she can protect herself and therefore her children from harm."

---

[3] Although the mother arguably waived her statutory-ground claim because she did not challenge paragraph (d), *see In re A.S.*, No. 23-1625, 2023 WL 8449568, at *1 (Iowa Ct. App. Dec. 6, 2023), we elect to bypass that waiver concern and address the claim on its merits.

The problem, however, is not the mother's reaction to the domestic violence but rather the relationship itself. The department's case manager testified that after she learned about the mother's new boyfriend, she did a background check on him and found an extensive criminal history. The case manager told the mother that "she shouldn't be in a relationship with him and he absolutely can't be around the children." The mother disregarded that advice and exposed the children to the boyfriend so much that they started to call him "dad." Her actions are especially concerning since the mother's last boyfriend abused both children. While the violence perpetrated by the boyfriends is not the mother's fault, her choice to allow these unsafe men around her children is. *See In re K.B.*, No. 24-1734, 2025 WL 271642, at \*4 (Iowa Ct. App. Jan. 23, 2025).

We agree with the juvenile court that the mother's relationship history with dangerous men and her failure to address that issue "shows she is unlikely to ever become capable of providing a safe and stable home for these children." *See In re J.R.*, No. 17-0556, 2017 WL 2684405, at \*3 (Iowa Ct. App. June 21, 2017) ("The threat to children posed by domestic violence in their home may serve as the basis for terminating parental rights."). Although the mother maintained that she wasn't in a relationship at the termination hearing, she failed to recognize that her sister and her sister's boyfriend were not appropriate caregivers for the children given their histories. Compounding the mother's inability to identify safe individuals, she stopped addressing her mental health in the months leading up to the termination hearing, which disrupted her fully supervised visits with the children. Under this record, we conclude sufficient evidence supports the juvenile court's finding that the children could not be safely returned to the mother's custody at the time of the termination hearing.

## B. Best Interests

In an argument that conflates the second and third steps in our analysis, the mother next claims that terminating her parental rights is not in the children's best interests because "the relationship between the mother and children is extremely close and bonded."

Separating these claims, we first address the best-interest question, which requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Because "[a] child's mental and emotional condition and needs is inherently impacted by the child's bond with a parent," that bond "is a relevant consideration in the best-interests analysis." *L.A.*, 20 N.W.3d at 535. But it is not the only consideration. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (stating that "the existence of a bond is not enough"). Instead, "the defining elements in a child's best interests" are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

Although the record shows a bond between the children and their mother, it also shows they were traumatized in her custody and subjected to abuse by a dangerous boyfriend. And after two years of services, that core safety issue was still present—the mother was in another volatile relationship with a violent criminal that led to police intervention the week before the termination hearing. Meanwhile, the children had become integrated into their adoptive foster home where—aside from the daughter's behavior issues after visits with the mother—they were doing well. *See* Iowa Code § 232.116(2)(b) (considering a child's integration into the foster family and the foster family's willingness to make that integration permanent). We agree

with the juvenile court that terminating the mother's parental rights is in the children's best interests "so that they will have the opportunity to grow and mature in a safe, healthy and stimulating environment, free from physical and sexual abuse, family dysfunction, and chaos." *See In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems.").

### C. Permissive Exception

For many of the same reasons, we deny the mother's claim that the juvenile court erred in failing to apply the permissive exception to termination in Iowa Code section 232.116(3)(c) based on "the closeness of the parent-child relationship." We do not doubt the mother's love for her children. But for this exception to apply, the mother was required to prove by "clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c); *see also A.B.*, 956 N.W.2d at 169. We conclude she failed to meet that burden.

Although the mother argues "that her children will suffer if her rights are terminated" because they "are old enough to know her and to care about her," the daughter's psychiatrist recommended suspending visitation with the mother because of her extreme behaviors after visits. While the son was not exhibiting the same behaviors, the mother did not present any evidence that he would be impacted by termination of her parental rights. Like the juvenile court, we find the permissive exception to termination under section 232.116(3)(c) does not apply.

**AFFIRMED.**